862 A.2d 471

**Wendy SIMPKINS**

v.

**FORD MOTOR CREDIT COMPANY, et al.**

**No. 00957, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Dec. 3, 2004.

2

John J. Beins (Seth D. Goldbert, Paul D. Glieberman, on brief), Washington, DC, for appellant.

Thomas G. Parachini (P. Rivka Schochet, Miller Canfield, Paddock and Stone, PLC, on brief), Detroit, MI, Steven C. Kahn (Miller, Canfield, Paddock and Stone, PLC, on brief), Washington, DC, for appellee.

Panel HOLLANDER, SHARER, SONNER*, ANDREW L., JJ.

SONNER, Judge.

The Maryland Constitution, Article III, section 57, provides that the legal rate of interest is six percent per year, "unless otherwise provided by the General Assembly." This is an old and enduring provision of our constitutional law, with roots to the Maryland Constitution of 1851. The Court of Appeals reaffirmed its significance in *United Cable Television of Baltimore v. Burch*, 354 Md. 658, 732 A.2d 887 (1999). In this appeal, we are asked whether the General Assembly did indeed allow for a late fee greater than six percent when an automobile retailer leases a car to a consumer, and the customer fails to pay a monthly payment on time. The Court of Appeals in *Burch* forecasted the emergence of such a question, but did not answer it. *See id.* at 685, 732 A.2d 887.

The Circuit Court for Prince George's County ruled that the late fees that Ford Motor Credit Company levied against Wendy Simpkins under two car leasing agreements were not interest payments, within the meaning of the Constitution and *Burch*. Alternatively, it ruled that the late fees were permissible interest payments that the General Assembly sanctioned by statute. Simpkins challenges those rulings on appeal.[1]

---

* Sonner, J. participated in the conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

1. Simpkins packaged her appeal into three questions:

I. Did Section 14–2002(g)(1) of the Maryland Motor Vehicle Leasing Act authorize motor vehicle lessors to charge consumer lessees a late fee in excess of 6% per annum, the legal limit on interest set forth in Article III, § 57 of the Maryland Constitution?

II. Did Md.Code, Commercial Law Article, § 14–1315 (effective in 2000) authorize Ford Credit to charge Wendy Simpkins a late fee in

We, however, agree with the circuit court that the late fees were lawful, so we affirm the judgment of the circuit court.

## I.

### A. The Lease Agreement

The facts for this appeal are simple and uncontested. On September 5, 1996, Wendy Simpkins leased a Mazda automobile from Primus Automotive Financial Services, Inc, a subsidiary of Ford Motor Credit Company. The contract established a monthly payment of $430.70 for three years. It also stated: "You will pay a late charge on each payment that is not received within 10 days after it is due. The charge is 7.5% of the full amount of the scheduled payment or $50.00, whichever is less." Simpkins paid at least one late charge under this lease. On September 6, 1999, Simpkins entered into another three-year lease agreement with Ford Motor. This agreement provided for a monthly payment of $437.73 and contained the same late charge provision, to which Simpkins was subjected at least once.

According to Ford Motor, the Motor Vehicle Consumer Leasing Contracts Law, section 14–2002(g) of the Commercial Law Article,[2] authorized it to impose late fees. That law provides:

(1) If the lease permits, a lessor may impose on the lessee:

(i) A late or delinquency charge for payments or portions of payments that are in default under the lease;

(ii) A collection charge, which may include all court and other collection costs actually incurred by the lessor, and, if the lease is referred for collection to an attorney who is not

---

excess of 6% per annum even though Wendy Simpkins' three year motor vehicle lease agreement with Ford Credit was entered into in 1999?

III. Is the effective date for the prospective application of Md.Code, Commercial Law Article, § 14–1315 October 1, 2000?

**2.** Unless otherwise noted, all statutory references are to the Maryland Code (1975, 2000 Repl.Vol., 2004 Supp.), Commercial Law Article.

a salaried employee of the lessor, a reasonable attorney's fee;

(iii) If any payment is made to the lessor with a check that is dishonored on the second presentment, a charge not to exceed $15.

In July 2001, Simpkins filed a class action complaint against Ford Motor, alleging that, notwithstanding section 14–2002(g)(1)(i), the late charges levied against her, in excess of six percent, violated the Maryland Constitution. She sought compensatory, injunctive, and declaratory relief in a seven-count complaint. Following Ford Motor's unsuccessful effort to have the case removed to the federal court, the circuit court held a hearing on February 4, 2003.[3] That hearing proceeded under an agreed statement of facts and for the sole purpose of answering the legal question of whether the late fee was unlawful.

### B. *United Cable Television of Baltimore v. Burch*

*Burch*, 354 Md. 658, 732 A.2d 887, was the natural starting point for the circuit court's consideration of the question presented. The focus of that case was a $5.00 late fee that a cable service in Baltimore charged its subscribers if they did not pay their bills by a particular date. The Court of Appeals held that the late fee, or what the cable company described as a liquidated damages provision, was unlawful because it was

---

**3.** The court actually held an earlier hearing in January 2003, upon Ford Motor's motion to dismiss. At the beginning of that hearing, Simpkins withdrew Count V of her complaint, "Breach of Implied Covenant of Good Faith and Fair Dealing," as well as Count VI, "Violation of Maryland Commercial Code § 2A–504." The court then merged Count I, "Restitution of Unlawful Liquidated Damages," and Count II, "Unjust Enrichment/Monies Had and Received." It left intact Count III, "Declaratory Judgment," and Count IV, "Violation of the Maryland Motor Vehicle Leasing Act Section 14–2001 *et seq* of the Commercial Law Article." Simpkins subsequently withdrew Count VII of the complaint, "Violation of the Maryland Consumer Protection Act." Thus, the court had before it a claim of restitution-unjust enrichment, an alleged violation of the Motor Vehicle Leasing Act, and a request for a declaratory judgment.

greater than the six percent per annum cap. The court reasoned:

> Under Maryland law, a [cable] customer's promises are a contract to pay money. From this conclusion, two consequences flow that are relevant to this case. First, the measure of damages for the breach of a contract to pay money is the amount promised to be paid plus interest at the lawful rate from the due date to the date of judgment. Second, because this measure of damages is simply a matter of calculation, it may not be increased by a contractual liquidated damages provision requiring payment of a greater amount. The result is that the liquidated damages provision is a penalty.

*Id.* at 668, 732 A.2d 887. These common law principles applied because the General Assembly had not provided otherwise by statute.

The Court then divided the Maryland late-charge statutes, which supercede the common law, into four categories. "Class I statutes regulate the amount and timing of a late charge." *Id.* at 675, 732 A.2d 887. "[A] Class II statute regulates the amount and timing of late charges and, in addition, expressly provides that those charges are not interest." *Id.* at 676–77, 732 A.2d 887. "Class III statutes authorize late charges without fixing any maximum late charge. Further these statutes expressly state that any late charge permitted by the statute is neither interest nor a finance charge." *Id.* at 677, 732 A.2d 887. Finally, "[c]lass IV statutes simply recognize that late charges, or late charges permitted by law, may in fact be assessed." *Id.* at 678, 732 A.2d 887.

The Court then reasoned:

> If one views the Class I, II, and III statutes against the background of the common law rule, these statutes permit that which would otherwise be unpermitted, as contrasted with regulating that which is permitted, but otherwise would be unregulated. Reinforcing this conclusion are the disclaimers stating that certain statutorily authorized late charges are not interest. These disclaimers reveal concern,

if not an underlying legal conclusion, that the late charges, absent statutory authorization, would constitute interest on the presently due and payable debt and would be subject to the limitations on interest.

The Class IV statutes may present a separate problem of statutory construction. Nevertheless, for purposes of this opinion, we shall assume that the Class IV statutes also change the common law rule with respect to damages for a default under a contract to pay money.

*Id.* at 680, 732 A.2d 887. The Court clarified, however, that it gave "no opinion" as to whether the late charges identified in Class IV statutes constituted interest for constitutional purposes. *Id.* at 685, 732 A.2d 887.

The motor vehicle leasing statute at issue here, section 14–2002(g), under which Ford Motor levied its late charge, is a Class IV statute. It identifies the possibility of a late charge, but does not set a specific amount, or assert one way or the other whether the late charge should be treated as interest.

## C. The Legislature's Response to *Burch*

Along with *Burch,* the circuit court had before it the General Assembly's response to *Burch,* Senate Bill 145, which the Governor signed into law on April 25, 2000. *See* 2000 Md. Laws, ch. 59. This law created section 14–1315 of the Commercial Law Article, which provides:

(a)(1) In this section the following words have the meanings indicated.

(2) "Consumer contract" means a contract involving the sale, lease, or provision of goods or services which are for personal, family, or household purposes.

(3) "Contract", unless specifically provided otherwise, includes consumer, commercial, and business contracts, covenants, leases of any kind, and tariffs on file with any regulatory authority.

(4)(i) "Late fee" means any charge or fee imposed because a payment is not made when the payment is due under the terms of a contract.

(ii) "Late fee" includes a fee imposed under subparagraph (i) of this paragraph that is described:

1. As a flat rate;

2. As a percentage of the amount due; or

3. In any other terms.

(b) The parties to a contract may agree to require the payment of a late fee when a party fails to make a payment when the payment is due.

(c) A contract that requires the payment of a late fee shall disclose, by its terms or by notice:

(1) The amount of the late fee;

(2) The conditions under which the late fee will be imposed; and

(3) The timing for the imposition of the late fee. (d) A late fee imposed under this section is not:

(d) A late fee imposed under this section is not:

(1) Interest;

(2) A finance charge;

(3) Liquidated damages; or

(4) A penalty.

(e) This section does not affect a late fee, a finance charge, interest, or any other fee or charge otherwise allowed under applicable law.

The General Assembly mandated that this law "apply to any case pending or filed on or after June 1, 2000." *See* 2000 Md. Laws, at § 6. Moreover, endeavoring to quell the sting that *Burch* inflicted on the business community, the General Assembly also included a retroactivity provision.[4] This rendered

---

4. *Burch* had sweeping effect; it caused any business that charged late fees without a clear mandate from the legislature to reevaluate its policy. Indeed, that led the Maryland Chamber of Commerce to present Senate Bill 145, which, perhaps perversely, was titled as a consumer protection law. For discussions of the business community's perception of *Burch* and the General Assembly's concern, see *Hearing on S.B. 145*, Senate Finance Committee (Feb. 1, 2000); House Floor

the new statute applicable to "all late fees provided for in contracts entered into, or in effect, on or after November 5, 1995," provided that such a late fee had not already become the subject of litigation, for which there was a final judgment and an exhaustion of appeals. *See id.* at §§ 5–6.

The retroactivity provision went into effect on October 1, 2000, *see id.* at § 8, but the Court of Appeals subsequently struck it down as unconstitutional in *Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 805 A.2d 1061 (2002). The entire law is set to expire in October 2005. *See* 2000 Md. Laws, at § 9.

Section 14–1315 addressed what the Court of Appeals implied was deficient in the Class IV statutes; it stated that the late charges in these statutes were not interest payments. Accordingly, after the effective date of section 14–1315, there could be little question that Ford Motor's late fee policy was lawful. Simpkins, however, signed her lease agreements in 1996 and 1999, before section 14–1315 went into effect. Of course, Ford Motor could not seek refuge in the retroactivity provision because it had been declared unconstitutional.

### D. The Circuit Court's Ruling

In a written opinion, the court below stated that the case presented a "question of first impression" because the appellate court's disclaimer in *Burch* regarding Class IV statutes rendered the opinion "not binding" on motor vehicle leasing contracts. Next, the circuit court concluded that the constitutional limit did not apply to Simpkins's motor vehicle lease because the legislature "chose to specifically authorize late or delinquency charges" for those contracts. It reasoned that if the General Assembly intended the limit to apply, it "would have simply remained silent" as to what was a lawful rate for a late fee. Or, it "would have referred to the late fee as 'interest' rather than a 'late or delinquency fee,' which would

Proceedings (March 30, 2000), and House Floor Proceedings (April 4, 2000).

have prohibited [Ford Motor] from assessing late fees in excess of six percent per annum."

Regarding section 14–1315, the court ruled that it applied to motor vehicle leases because they belonged in the category of "leases of any kind." *See* § 14–1315(a)(3). Also, the statute clearly established that a late fee charged on such a lease was not to be construed as interest. *See id.* at 14–1315(d). The court then ruled that the effective date of the applicable portions of 14–1315 was June 1, 2000, notwithstanding that the retroactivity provision went into effect four months later.[5] In the court's view, Ford Motor could rely on 14–1315 beginning in June 2000, even if it could not do so when the leases were signed in September 1996 and September 1999.

## II.

■ As in the circuit court, the primary question for our review is whether the late charge identified in the leasing statute of section 14–2002(g) is lawful, so that Ford Motor was justified in imposing late fees that amounted to seven-and-a-half percent per annum of the delinquent payment. Because we conclude that the statute is lawful, and that Ford Motor's lease contract was valid, we need not consider the secondary issue of whether section 14–1315 also rendered the late fees lawful.

■ Construing section 14–2002(g), our "primary goal" is to " 'ascertain and effectuate the intention of the legislature.' " *Bank of Am. v. Stine,* 379 Md. 76, 85, 839 A.2d 727 (2003) (citation omitted).

---

5. The question of whether section 14–1315 applies to contracts in existence before October 1, 2000, is presently before the Court of Appeals. *See Burch v. United Cable,* 377 Md. 111, 832 A.2d 204 (2003) (*"Burch II "*). In 2003, this Court, in an unreported opinion, declined to address the question because the consumers/appellants had not preserved the issue in the circuit court. *See Burch v. United Cable Television of Baltimore,* 377 Md. 111, 832 A.2d 204 (2003). Appellants appealed, and we now await a decision from the Court of Appeals.

In order to discern legislative intent, we first examine the words of the statute and if, giving them their plain and ordinary meaning, the statute is clear and unambiguous, we will end our inquiry. As we have recognized, however, "[a]n ambiguity may . . . exist even when the words of the statute are crystal clear. That occurs when its application in a given situation is not clear." Therefore, a statutory provision may be ambiguous: "1) when it is intrinsically unclear; or 2) when its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain." Further, "when the statute to be interpreted is part of a statutory scheme, . . . [we read it in context, together with the other statutes] on the same subject, harmonizing them to the extent possible. . . ." We also "seek to avoid constructions that are unreasonable, or inconsistent with common sense," and we will presume that "the Legislature 'intends its enactments to operate together as a consistent and harmonious body of law,' " so that "no part of the statute is rendered meaningless or nugatory." In our endeavor to harmonize the provisions of all of the relevant statutes, this Court will prefer an interpretation that allows us to avoid reaching a constitutional question.

*Id.* at 85–86, 839 A.2d 727.

The circuit court applied these principles of statutory construction and reached a decision that is persuasive to us. If the General Assembly intended us to treat the late charges of section 14–2002(g) as interest, subject to the constitutional limit, it would have referred to those charges as interest, not as "late or delinquency charges." Or, the legislature could have said nothing and the constitutionally mandated interest rate of six percent would have applied automatically to lease contracts. Moreover, the statute specifically provides that the late fee amount is to be determined as "the lease permits," that is, between the contracting parties, rather than by the constitutional limit.

We also have reviewed the legislative bill file for section 14–2002, but it does not assist us in answering the appeal. We learned that the statute grew from an advisory board compiled

of business and consumer advocates. The stated purpose of the bill was to make car leasing more akin to outright car purchases. The sponsor of the bill, Delegate Elijah Cummings, pressed its consumer protections. Nonetheless, we found no specific reference to section 14–2002(g), and the bill became law with some amendments, irrelevant to our purposes.

As we began this opinion, the Maryland Constitution provides that the legal rate of interest is six percent per year, "unless otherwise provided by the General Assembly." With section 14–2002(g), the legislature did indeed provide otherwise.

**JUDGMENT AFFIRMED;**

**APPELLANT TO PAY COSTS.**