886 A.2d 126

**Wendy J. SIMPKINS**

**v.**

**FORD MOTOR CREDIT COMPANY, et al.**

**No. 2, Sept. Term, 2005.**

Court of Appeals of Maryland.

Nov. 15, 2005.

John J. Beins (Seth D. Goldberg, Paul D. Gleiberman, Beins, Goldberg & Gleiberman, Washington, DC, on brief), for petitioner.

Thomas G. Parachini (P. Rivka Schochet, Miller, Canfield, Paddock and Stone, P.L.C., Detroit, MI, Steven C. Kahn, Washington, DC, on brief), for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

This matter originated with the filing of a class action complaint [1] in connection with the legality of late fees charged to a lessee pursuant to an automobile lease. In 1996, Wendy Simpkins leased an automobile from Primus Automotive Financial Services, Inc., a subsidiary of Ford Motor Credit Company ("FMC"). The leasing contract established a monthly payment and a late charge of 7.5% of the full amount of the scheduled payment or $50.00, whichever is less, for each payment not received within 10 days after its due date. Ms. Simpkins paid at least one late charge in accordance with two leases with FMC, one in 1996 and another in 1999. Since the filing of the initial complaint, the parties and claims in the instant case have gone through several incarnations. [2] The

---

1. Ms. Simpkins filed her Motion for Class Certification on September 9, 2002. The record does not indicate that this initial motion was ruled upon. Ms. Simpkins filed an additional Motion for Class Certification and Memorandum in Support of that motion on December 20, 2002. FMC filed an opposition to Ms. Simpkins's Motion for Class Certification. The only indication of the Circuit Court's decision on this motion lies in the docket entries for January 17, 2003. The docket entries note: "Plaintiff Motion for Class Certification Reserved." The instant case was later dismissed, as noted *infra,* and the Motion for Class Certification was never considered. In the event the instant case proceeds on the merits on remand, the Circuit Court will have to determine whether the matter can be maintained as a class action. Md. Rule 2–231(c).

2. The instant case began with the filing of a Class Action Complaint against Mazda American Credit Corporation t/a Mazda American Credit by Wendy Simpkins and Lynford Martin in the Circuit Court for Prince

dismissal of the Second Amended Complaint is the origin of this appeal.

In the Second Amended Complaint, Ms. Simpkins alleges that any late payment fee charged by FMC in excess of 6% *per annum* to its Maryland lease finance customers is an unlawful penalty under the Maryland Constitution and the common law.[3] Ms. Simpkins asked the trial court to force FMC to refund all excessive late fees collected, plus prejudgment interest, to her and the members of the putative class. Ms. Simpkins also requested a declaratory judgment holding that the Maryland Consumer Motor Vehicle Leasing Contracts Act, Md.Code (1975, 2000 Repl.Vol.), § 14–2001 *et seq.* of the Commercial Law Article did not permit motor vehicle lessors like FMC to charge and collect a late fee in excess of the 6% *per annum* constitutional limit on interest set forth in Art. III, § 57 of the Maryland Constitution.[4] Finally, Ms.

---

George's County. Mr. Martin was voluntarily dismissed from the suit on February 4, 2003, and is not a party to this appeal. That Complaint was subsequently amended to add FMC Company t/a Mazda American Credit and Primus Automotive Financial Services, Inc. (both respondents shall be referred to collectively as "Ford Motor Credit" or "FMC").

**3.** Ms. Simpkins relies on our decision in *United Cable Television v. Burch*, 354 Md. 658, 732 A.2d 887 (1999), *superceded by* 2000 Md. Laws 59, in support of her argument that late fees in excess of 6% *per annum* violate Maryland common law. In *Burch*, consumer subscribers of cable television service brought a class action suit against their provider challenging the five dollar per month late fee charged to them. *Burch*, 354 Md. at 662, 732 A.2d at 889. The Circuit Court for Baltimore City found that the late fee was a penalty "and not an enforceable liquidated damages provision, because it unreasonably overestimated the supplier's costs resulting from late payment." *Id.* This Court held that under Maryland common law "when money is not paid by a date certain in a contract for the payment of a definite sum of money [,] the *measure of damages* is the amount of money promised to be paid, with legal interest. . . ." *Burch*, 354 Md. at 669, 732 A.2d at 893. (citations omitted). Therefore, United Cable Television "was entitled to charge a late fee, when the principal was not paid by the due date, only at the legal rate of interest." *See Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 612, 805 A.2d 1061, 1066 (2002).

**4.** Article III, § 57 provides that the legal rate of interest in Maryland shall be 6% "unless otherwise provided by the General Assembly."

Simpkins alleged that she was entitled to statutory penalties and damages provided under Md.Code (1975, 2000 Repl.Vol.), § 14–2002(g)(1)(I).[5] The trial court dismissed Ms. Simpkins's remaining claims concluding that the amount of the late fee assessed is the amount specified by the lease, and not the 6% interest rate established by Md. Const. Art. III, § 57. Ms. Simpkins filed a timely appeal, and the intermediate appellate court affirmed the decision of the trial court. *Simpkins v. Ford Motor Credit Co.*, 160 Md.App. 1, 862 A.2d 471 (2004). We granted Ms. Simpkins's petition for writ of certiorari.[6] *Simpkins v. Ford Motor*, 386 Md. 180, 872 A.2d 46 (2005).

Ms. Simpkins presents two questions for our review, which we have recast for clarity:

1. Does Md.Code (1975, 2000 Repl.Vol.), § 14–2002(g)(1) of the Commercial Law Article and the Maryland Consumer Motor Vehicle Licensing Contracts Act authorize motor vehicle lessors to charge consumer lessees a late fee in excess of 6% per annum?

2. Does Md.Code (1975, 2000 Repl.Vol.), § 14–1315 of the Commercial Law Article authorize FMC to charge Ms. Simpkins a late fee in excess of 6% per annum on the lease she entered into in 1999?

We decline to reach the issues presented by Ms. Simpkins and remand the instant case for proceedings to address the effect, if any, of Ms. Simpkins's involvement with the settlement of the class action suit in *Stickles v. Ford Motor Credit*

---

5. Section 14–2002(g)(1)(i) provides:
    (g)(1) If the lease permits, a lessor may impose on the lessee:
    (i) A late or delinquency charge for payments or portions of payments that are in default under the lease[.]

6. FMC filed, in this Court, a motion to dismiss the instant appeal pursuant to Md. Rules 8–602(a)(1) and (10) and 8–603. For the reasons stated herein, we deny FMC's motion to dismiss and reverse the judgment of the Court of Special Appeals. We remand this case to the intermediate appellate court with directions to vacate the judgment of the Circuit Court for Prince George's County and remand the case to that court for proceedings consistent with this opinion.

*Co.*, Case No. 981289, filed in the Superior Court for the State of California, County of San Francisco, and related issues.

## *Facts*

Wendy Simpkins and Lynford Martin filed a class action complaint on February 20, 2001, in the Circuit Court for Prince George's County naming Mazda American Credit Corporation t/a Mazda American Credit as the sole defendant.[7] Ms. Simpkins and Mr. Martin filed a First Amended Class Action Complaint on July 17, 2001, adding FMC Company t/a Mazda American Credit and Primus Automotive Financial Services, Inc.[8] The intermediate appellate court summarized Ms. Simpkins's relationship with FMC:

> On September 5, 1996, Wendy Simpkins leased a Mazda automobile from Primus Automotive Financial Services, Inc, a subsidiary of Ford Motor Credit Company. The contract established a monthly payment of $430.70 for three years. It also stated: "You will pay a late charge on each payment that is not received within 10 days after it is due. The charge is 7.5% of the full amount of the scheduled payment or $50.00, whichever is less." Simpkins paid at least one late charge under this lease. On September 6, 1999, Simpkins entered into another three-year lease agreement with Ford Motor. This agreement provided for a monthly pay-

---

7. Mr. Martin's and Ms. Simpkins's first Complaint alleged the following against Mazda American Credit Corporation only: Count I: Restitution of Unlawful Liquidated Damages; Count II: Unjust Enrichment/Monies Had and Received; Count III: Declaratory Judgment; Count IV: Violation of the Maryland Motor Vehicle Leasing Act, Md.Code (2000 Repl.Vol.), § 14–2001 *et seq.* of the Commercial Law Article; Count V: Breach of Implied Covenant of Good Faith and Fair Dealing; Count VI: Violation of Md.Code (2000 Repl.Vol.), § 2A–504 of the Commercial Law Article; and Count VII: Violation of the Maryland Consumer Protection Act, Md.Code (1975, 2000 Repl.Vol.), § 13–301 *et seq.* of the Commercial Law Article.

8. Primus Automotive Financial Services, Inc., was a wholly owned subsidiary of FMC until August 1, 1999, when Primus became a division of FMC.

ment of $437.73 and contained the same late charge provision, to which Simpkins was subjected at least once.

*Simpkins,* 160 Md.App. at 4, 862 A.2d at 473.

On August 23, 2001, Ms. Simpkins and Mr. Martin removed the case to the United States District Court for the District of Maryland, Southern Division. A Motion for Remand filed by Ms. Simpkins and Mr. Martin was granted on November 28, 2001, and the Federal Court issued a Memorandum Opinion and Order remanding the case back to the Circuit Court for Prince George's County.

After the case was remanded, Ms. Simpkins and Mr. Martin filed the aforementioned Second Amended Complaint on September 10, 2002. Respondents filed motions to dismiss. The first hearing (on FMC's motion to dismiss) was held on January 17, 2003.[9] On February 4, 2003, a Rule 2–502[10] hearing was held for the Circuit Court's determination of certain issues of law in accordance with a stipulated statement of facts.[11] During the hearing, the court noted that the

---

9. Prior to argument, Ms. Simpkins and Mr. Martin voluntarily withdrew Counts V and VI. After hearing argument, the Circuit Court merged Counts I (unjust enrichment) and II (restitution) and denied the respondents' Motions to Dismiss Counts III (Declaratory Judgment), IV (Violation of the Maryland Motor Vehicle Licensing Act, Md.Code (1975, 2000 Repl.Vol.), § 14–2002(g)(1)), and VII (Violation of the Maryland Consumer Protection Act, Md.Code (1975, 2000 Repl.Vol.), § 13–301 *et seq.* of the Commercial Law Article).

10. Md. Rule 2–502 provides in pertinent part:

If at any stage of an action a question arises that is within the sole province of the court to decide, whether or not the action is triable by a jury, and if it would be convenient to have the question decided before proceeding further, the court, on motion or on its own initiative, may order that the question be presented for decision in the manner the court deems expedient. In resolving the question, the court may accept facts stipulated by the parties, may find facts after receiving evidence, and may draw inferences from these facts. The proceedings and decisions of the court shall be on the record, and the decisions shall be reviewable upon appeal after entry of an appealable order or judgment.

11. At this hearing, the parties made certain stipulations. Ms. Simpkins withdrew Count VII of the Second Amended Complaint, alleging violations of the Maryland Consumer Protection Act. The parties also agreed

defendants had requested a stay "based on the nationally certified case of [*Stickles* ]." [12]   At this time, the trial judge briefly addressed *Stickles:*

> [THE COURT]: *Stickles v. Ford Motor Credit Company.* This is a case filed in the California Superior Court in the County of San Francisco, Case No. 981289. And there was a settlement reached in that case.  And it's potentially possible, and 1 emphasize just potentially, it's potentially possible that the sole plaintiff in this case, Ms. Simpkins, may be a party to that case.
>
> However, it is my understanding that that settlement is now under appeal.  The appeal was filed by one of the members

---

that "what has been designated as the late fees in the instant case, and also as provided in [Md.Code (2000 Repl.Vol.), § 14–2002 of the Commercial Law Article] is the category of late fees which falls under Class 4, as designated in ... [*United Cable v. Burch*, 354 Md. 658, 678, 732 A.2d 887, 898 (1999)]."

**12.** In its February 4, 2002 motion to dismiss, and in support of its request for a stay, FMC brought the potential effects of *Simpkins* on the instant case to the hearing court's attention:

> Here, several factors weigh heavily in favor of granting a stay. . . . [A] nationwide class action proceeding in California, *Stickles v. Ford Motor Credit Co.*, Case No. 981289, in the Superior Court of California in and for the County of San Francisco, addresses the same issues presented in this case—the validity of Ford Credit motor vehicle lease payment late fees.  Attached as Exhibits A and B, respectively, are the amended complaint and the order granting nationwide class certification in the California action.   Discovery in *Stickles* has been completed and the case is ready for trial.
>
> Maryland consumers have been included in the *Stickles* class, to the extent that Ford Credit does not have a counterclaim against them. Therefore, there will be a significant overlap between the purported class members in this case and in *Stickles*.   These class members should not be permitted to have two bites at the apple. . . . It will be a hardship for Ford Credit to have to defend both the California class action and this class action, both addressing the same issues, at the same time.   It will be a hardship for Ford Credit should the different actions have different results because it will be impossible for them to know how to structure their late fees so as to be in compliance with any different rulings.

FMC also raised the issue in its list of affirmative defenses, stating that Ms. Simpkins's claims, in whole or in part, were barred as a result of her membership in the national class with "some or all of [her] claims . . . being adjudicated" in *Stickles*.

of the class. And since there is no final resolution to that case, there is, at least as far as this case is concerned, no reason to hold up my decision in this case. Is that a fair statement? Do either one of you want to add to that?

[COUNSEL FOR FMC]: The only thing I would add, Your Honor, is that, it's a correct statement. If and when that case becomes final and there is a non-appealable order in California, we would make application to the Court for res judicata effect, but we are not in that position at the present time.

[THE COURT]: Thank you.

[COUNSEL FOR MS. SIMPKINS]: With that statement, I'll fight that battle when I have to fight that battle.

This colloquy was the only discussion that took place at the hearing on the implications of *Stickles.* On June 6, 2003, the Circuit Court dismissed the remaining claims of Ms. Simpkins's Second Amended Complaint and in its Memorandum Opinion and Order held:

(1) that the holding in *United v. Burch* is not binding on the Motor Vehicle Leasing Contracts Act, CL § 14–2002 *et seq.;*
(2) that the amount of the late fees Defendants charge pursuant to CL § 14–2002(g)(2) shall be the amount specified in the lease, subject to the "Consumer Leasing Act" codified at 15 U.S.C. § 1667 through 1667(e), and regulations promulgated pursuant thereto, as amended. CL § 14–2001(e), until May 31, 2000;
(3) that commencing June 1, 2000, lessors in Maryland became subject to CL § 14–1315(a)–(e) and commencing October 1, 2000, lessors became subject to CL § 14–1315(f);
(4) that CL § 14–1315 applies to and regulates late fees charged by motor vehicle lessors to consumer lessees after June 1, 2000.

This Court also concludes that it is unnecessary to address Questions V [Whether the applicable statute of limitations for plaintiffs' constitutional and common law claims is three years or a greater period?] and VII [Whether plaintiff Wendy Simpkins states a cause of action under any com-

mercial motor vehicle lease?] since its rulings deny Plaintiff any and all relief she requested.

Ms. Simpkins filed a timely Notice of Appeal, and the intermediate appellate court issued its reported opinion on December 3, 2004, affirming the trial court's judgment.[13] This court issued its mandate on January 3, 2005.

## The *Stickles* Settlement Agreement[14]

*Stickles v. Ford Motor Credit Company* is a class action suit filed by Connie Stickles and others in the Superior Court of California. The class action complaint asserted contract claims and violations of California's version of the Uniform Commercial Code against FMC as a result of alleged illegal penalties and/or late fee charges imposed upon motor vehicle lessees. In May 2002, the parties reached a settlement and executed a Settlement Agreement and Release.[15] The Final Judgment stated that all members of the class certified in *Stickles* "have released and are hereby permanently enjoined and restrained from filing or prosecuting any Settled Claim [16]

---

13. As we shall discuss *infra*, we need not consider the reasoning of the Court of Special Appeals in detail as we do not find the court's consideration of the issues to be proper.

14. Ordinarily, we do not consider issues that are not raised in the petition for certiorari or any cross-petition. Md. Rule 8–131(b). The issue of *res judicata* was not raised in the petition for *writ of certiorari* or in any cross-petition. Notwithstanding, in the exercise of our discretion, we have considered respondents' motion to dismiss and, under Rules 8–604(a)(5) and 8–604(d), remand for the trial court to reconsider the issue of *res judicata*. *See State v. Parker*, 334 Md. 576, 596–97, 640 A.2d 1104, 1114 (1994) ("The use of the term 'ordinarily' [in Md. Rule 8–131(b)] implies that this Court possesses the discretion to consider issues that were not necessarily raised in the petition or order for a Writ of Certiorari.").

15. A copy of the Settlement Agreement and Release that was intended to be sent to the members of the class was provided to the hearing court in the instant case as a part of the Order Preliminarily Approving the Settlement Agreement.

16. The Final Judgment defined "Settled Claim" as follows:
    a. Any and all claims, actions, causes of action, offsets or liabilities, whether known or unknown, suspected or unsuspected, contingent or

against any of the Released Parties." "Plaintiff Class" was defined by the Final Judgment as:

> [A]ll persons in the United States . . . who, at any time from September 24, 1992 to March 1, 2002:(1) entered into a lease of a vehicle for personal and/or business use for which Ford Motor Credit Company (but not one of its dbas) either directly or by assignment from a dealer, provided retail lease financing; (2) made one or more required lease payments after the payment due date; (3) were thereafter charged late fees by Ford Motor Credit Company; (4) paid those late fees; and (5) were not subject to counter claims from Ford Motor Credit Company. On August 1, 1999, Primus Automotive Financial Services, Inc. was merged into Ford Credit. The Plaintiff Class also includes former Primus customers who paid late fees to Ford Credit after August 1, 1999.

The Release provided in part:

5. As of the Effective Date of this Agreement, each Plaintiff, and each member of the Plaintiff Classes who has not opted out in accordance with the procedures set forth in paragraph 10 below, acknowledges full satisfaction of, and fully, finally and forever releases, settles and discharges the Released Parties of and from all Settled Claims.

*　　*　　*　　*　　*　　*

---

matured, related to fees or other charges for delinquency, default or late payment, including claims for excessive late fees or improper disclosure of such fees or other charges, which any named plaintiff or any Class member has had, or now has,

b.  Under (a) of the federal Consumer Leasing Act (15 U.S.C. § 1667 et seq.), (b) any state law governing personal property leases (including but not limited to any state's version of the Uniform Commercial Code, such a California Commercial Code Division 10), (c) any state's law governing vehicle leases or consumer vehicle leases (such as California Civil Code section 2985.7 et seq.), (d) any state law governing liquidated damages or unconscionable contract provisions (such as California Civil Code sections 1670.5 and 1671), or (e) any other statute or common law principle or rule of law,

c.  Arising out of or connected in any way with late payments to Ford Motor Credit Company or Primus Automotive Financial Services, Inc.

b. For purposes of this paragraph, "Settled Claims" means and includes:

I. Any and all clams, actions, causes of action, offsets or liabilities, whether known or unknown, suspected or unsuspected, contingent or matured, related to fees or other charges for delinquency, default or late payment, including claims for excessive late fees or improper disclosure of such fees or other charges, which any named plaintiff or any Class member has had, or now has[.]

Paragraph 14b of the Settlement Agreement provided that each settlement check mailed to a member of the Settlement Class contain a statement on the reverse side of the check reserved for endorsement by the payee indicating:

In full satisfaction and release of all claims respecting Ford Motor Credit vehicle lease late fees and/or disclosures thereof as provided in paragraph [4.7] [17] of the judgment in [*Stickles v. Ford Motor Credit Co.*], no. 981289 in the San Francisco Superior Court.

The Ford Motor Credit settlement period began on September 24, 1992, and ended on March 1, 2002. The Primus settlement period began on August 1, 1999, and ended on March 1, 2002.[18] Ms. Simpkins received a notice providing her with an opportunity to opt out of the *Stickles* settlement class, but she did not.

## Discussion

FMC filed a Motion to Dismiss the instant appeal pursuant to Md. Rules 8–603, and 8–602(a)(1), (10),[19] on the grounds

---

**17.** The specific paragraph of the *Stickles* judgment was not referenced in the original Settlement Agreement; however, as an exhibit to its brief in this Court, FMC provided a copy of the settlement check that contained the endorsement language in its entirety.

**18.** As noted *infra*, Primus was a wholly owned subsidiary of FMC until August 1, 1999, when Primus became a division of FMC. As such, and as stipulated by the parties, FMC assumed the liabilities of Primus by operation of law.

**19.** Md. Rule 8–602(a)(1) and (10) provide:

that Ms. Simpkins's claims, and the issues raised on appeal, are moot in light of Ms. Simpkins's voluntary participation as a class member in *Stickles*. FMC supports its argument by noting that Ms. Simpkins filed a claim form and subsequently received a settlement payment of $24.11 as a class member, thus settling and releasing her claims against FMC regarding excessive late fees. Ms. Simpkins counters that, through the act of depositing the settlement check she received, she did not release her claims against FMC, nor did that act constitute an accord and satisfaction.[20]

The issues raised by FMC's Motion to Dismiss and Ms. Simpkins's response were not considered substantively by the lower court. It is asserted here that Ms. Simpkins signed a release purportedly as a member of the *Stickles* class and deposited the settlement check she received from FMC. The court did not make findings of fact as to Ms. Simpkins's participation in that case nor did it explore what effect, if any, the alleged deposit of Ms. Simpkins's settlement check had on the present case and what Ms. Simpkins's exact actions were in connection with the receipt and execution of the Settlement Agreement purportedly sent to her by FMC. Moreover, there is some dispute raised before us as to whether Ms. Simpkins met the requirements of *Stickles* class membership because

---

(a) Grounds. On motion or on its own initiative, the Court may dismiss an appeal for any of the following reasons:
(1) the appeal is not allowed by these rules or other law;

\*        \*        \*

(10) the case has become moot.

**20.** Ms. Simpkins also argues that FMC failed to raise and thus preserve in the Circuit Court its affirmative defenses of *res judicata* and release. We find this to be an incorrect characterization, as the record reflects that the matter was discussed by the parties and the hearing judge at the February 2003 hearing. *See* pages 432–35, 886 A.2d at 130–31, *supra*. We disagree with Ms. Simpkins's contention that the issues of *res judicata* and release are not threshold issues of law to be considered by the Circuit Court, especially where additional fact finding may be necessary to resolve these issues. To the contrary, the resolution of these issues determines whether this, or the intermediate appellate

FMC had filed a counterclaim against her.[21]   The *Stickles* Final Judgment Order, which defines both who is a member of the "Plaintiff Class" and what is a "Settled Claim," were not a part of the record before the Circuit Court.   There was limited mention of Ms. Simpkins's actions in connection with the receipt of the Settlement Agreement and Release, but little or no consideration or analysis of these actions at either the circuit or intermediate appellate court levels.   It was admitted by counsel that Ms. Simpkins deposited the settlement check she received from FMC and never returned the money.

Generally, we may only review issues raised in, or decided by, the trial court.   Md. Rule 8–131(a).   As the bulk of these issues were not considered substantively by the trial court, we are not in a position to rule definitively whether Ms. Simpkins's was a member of the *Stickles* class, and what effect, if any, the alleged execution of the Settlement Agreement will have in the instant case.   The Circuit Court, in the first instance, is in the best position to develop this record and decide these issues.

Md. Rule 8–604 dictates our determination of a matter on appeal,[22] and Section (d)(1) details when a remand to the lower court is proper:

> *Generally.* If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by

court, will ever reach the statutory and constitutional issues presented by Ms. Simpkins.

21.   FMC dismissed its counterclaim against Ms. Simpkins on November 16, 2002.

22.   Rule 8–604(a) provides:
(a) Generally. As to each party to an appeal, the Court shall dispose of an appeal in one of the following ways:
(1) dismiss the appeal pursuant to Rule 8–602;
(2) affirm the judgment;
(3) vacate or reverse the judgment;
(4) modify the judgment;
(5) remand the action to a lower court in accordance with section (d) of this Rule;  or
(6) an appropriate combination of the above.

permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

Because the merits of the case cannot be determined on the record before us, the matter must be remanded, providing the parties with an opportunity to engage in additional proceedings at the trial court "as the purposes of justice may require." *Campbell v. Lowe,* 9 Md. 500, 511 (1856). We are permitted to remand a case if " 'the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of any of the pleadings or the introduction of further evidence, making additional parties, or otherwise[.]' " *State Rds. Comm'n of Md. v. Hudson,* 210 Md. 59, 62, 122 A.2d 553, 554 (1956) (quoting Code 1951, Art. 5, § 42) (internal alterations omitted). Where there is solid evidence in support of disputed factual allegations, it is proper to place the responsibility for resolving such a conflict "with the trial court, a tribunal which is in a position vastly superior to that of an appellate court to perform this very important task." *Kowell Ford, Inc. v. Doolan,* 283 Md. 579, 584, 391 A.2d 840, 843 (1978).

The *Stickles* case and its potential *res judicata*[23] effect on the instant case was brought to the hearing court's atten-

---

**23.** Maryland law requires the following elements for the application of res judicata: "1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits." *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.,* 361 Md. 371, 392, 761 A.2d 899, 910 (2000) (citing *Blades v. Woods,* 338 Md. 475, 478–79, 659 A.2d 872, 873 (1995)). *See also Mackall v. Zayre Corp.,* 293 Md. 221, 227–28, 443 A.2d 98, 101–102 (1982). Accordingly, a judgment between the same parties and their privies acts as a final prohibition to any other proceeding upon the same cause of action and is final, "not

tion in both FMC's motion to dismiss and in open court on February 4, 2002. Prior to the intermediate appellate court's decision in the instant case, several key matters were decided in connection with Ms. Simpkins's case: most notably, FMC dismissed its counterclaim against Ms. Simpkins on November 16, 2002, and the appeal of the *Stickles* case was dismissed on August 29, 2003. There is some validity to the argument that the facts required to discuss these issues were not in place at the time of the hearing in February 2003; however, a final judgment in *Stickles* was issued on November 1, 2002, and all appeals of that decision were dismissed on August 29, 2003. The hearing court could have reasonably continued this matter as early as February 2003 at the Rule 2–502 hearing or in June 2003, at the time of its dismissal, to await resolution of the *Stickles* proceedings. FMC actually requested a stay during the February 2003 hearing, but that request was not ruled upon by the trial court. In any event, the issue of *res judicata* is now ripe. It would be improper for this court to consider this issue on the merits.

■ Moreover, the *Stickles* appeal was dismissed prior to the decision of the intermediate appellate court, and the issue of *res judicata* should have been resolved prior to the resolution of the other statutory issues that were raised. It is a longstanding tenet of Maryland law "to decide questions of law in advance of a determination of the main issue, if it is convenient so to do, by special case stated or otherwise." *Commissioners of Cambridge v. Eastern Shore Pub. Serv. Co.,*

only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit."* Colandrea, 361 Md. at 392, 761 A.2d at 910 (citation omitted). *Res judicata* is applied notwithstanding the type of court which rendered the earlier final judgment, *De Maio v. Lumbermens Mut. Cas. Co.,* 247 Md. 30, 34, 230 A.2d 279, 281 (1967), provided that the earlier final judgment was rendered by a court of "competent jurisdiction." *Moodhe v. Schenker,* 176 Md. 259, 268, 4 A.2d 453, 458 (1939). The judgment of a court, acting within the limits of its jurisdiction, that has not been reversed must be accepted as conclusive by all other courts. *Powles v. Jordan,* 62 Md. 499, 503 (1884).

192 Md. 333, 341, 64 A.2d 151, 155 (1949) (citation omitted). *See also* Md. Rule 2–502.

We shall reverse the decision of the intermediate appellate court and remand this matter in order to permit the Circuit Court to reconsider the implication of the *Stickles* settlement. Specifically, consideration should be given to whether Ms. Simpkins executed a valid release, precluding any further litigation between herself and FMC, and what, if any, *res judicata* effect the *Stickles* settlement had on Ms. Simpkins's claims in the instant case. Consideration of these, and other related issues, are necessary to determine whether Ms. Simpkins's case will proceed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE IS REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**