500 A.2d 1042

**Larry S. BALDUCCI et al.**

v.

**Henry M. EBERLY et ux.**

**No. 14, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 4, 1985.

Michael F. Dooley (Joseph P. McMahon, on brief), Riverdale, for appellant.

Joseph F. McBride (Joseph F. McBride, P.A., on brief), Silver Spring, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

I

On February 21, 1975, Henry and Delores Eberly (mortgagors/appellees) executed a deed of trust on real property located in Prince George's County to secure payment of two notes totalling $80,000 with a seven percent per annum interest rate. The appellants, Larry S. Balducci and Joseph P. McMahon, were named as trustees. Under the terms of that agreement, the mortgagors promised to pay the indebtedness and "all taxes, assessments, water rates and other governmental or municipal charges...."[1]

The controversy which is the subject of the present appeal began when the mortgagors received a letter, dated December 29, 1981, from trustee McMahon which called for "an acceleration under the existing deed of trust because of ... (their) failure to make payments as required thereunder." The total amount claimed to be due was $71,524.31. The mortgagors submitted statements to McMahon which showed that their principal and interest payments were current.

---

1. In addition, the agreement stated:
   "... should default occur in the payments or other terms, covenants or conditions of prior deeds of trust or other liens, including taxes and assessments on the herein described property then the debt described herein shall at the option of the holder of said note, immediately become due and payable in full, and the Trustees herein shall have the power to sell and convey as set forth herein; or the holder of said note may make such payments or pay such charge and the same shall be added to and be deemed to be secured by this Deed of Trust."

McMahon then sent a letter dated January 27, 1982 to the mortgagors in which he stated that although they were not in default of principal and interest payments, the taxes had not been paid for 1980–81 or 1981–82.[2]

The mortgagors, in an attempt to resolve the matter by February 5, 1982, paid the taxes due on the property on February 4, 1982. On March 24, 1982, the trustees filed in the Circuit Court for Prince George's County an order to docket a foreclosure action.[3] All principal and interest payments and taxes were current at the time of the filing of the foreclosure action.

On April 6, 1982, the mortgagors filed a motion for "Ex Parte and/or Interlocutory Injunction," pursuant to Md. Rule W76 b, seeking to enjoin the foreclosure action. On that date, Judge Levin signed an order enjoining the fore-closure until April 13, 1982, the date of the hearing on the petition for interlocutory injunction. Judge Levin also signed an order granting the interlocutory injunction "until such time as a hearing is held on the merits hereof." There is no indication that a hearing was held before that order was signed.[4]

On April 13, 1982, the court (Mason, J.) granted the petition for interlocutory injunction and on May 5, 1982, signed an order which made the injunction permanent as to all defaults alleged to have occurred prior to the date of the hearing. The trustees appealed to the Court of Special Appeals. That court, in an unreported per curiam opinion

---

2. That letter further stated:
    "I would immediately advise that you call me in order that we can resolve either by you paying off the trust or for modification in the terms and conditions of the trust without the need for fore-closure on my part. I would expect that this matter be resolved by February 5, 1982, or else I shall have to proceed with fore-closure."

3. *See* Md. Rule W72 c 2.

4. *See* Md. Rules BB70 c and BB74.

dated February 15, 1983 reversed the lower court and vacated the injunction. *Balducci v. Eberly,* No. 822, September Term, 1982.[5]

Thereafter, the trustees resumed foreclosure proceedings. The mortgagors filed another petition for "Ex Parte and/or Interlocutory Injunction" to enjoin that foreclosure. On May 2, 1983, the court (Mason, J.) held a hearing at which, according to that court, the mortgagors were "well armed with testimonial and documentary evidence to support their position." However, the court, by decree dated January 11, 1984, dismissed the petition on the ground that it was barred by the doctrine of *res judicata.*

The mortgagors appealed to the Court of Special Appeals. On December 11, 1984, that court reversed the lower court's holding of *res judicata,* enjoined further foreclosure proceedings and further held that: (1) payment of delinquent taxes before commencement of the foreclosure action bars acceleration and foreclosure, and (2) the unconditional acceptance by the trustees of the principal and interest payments following notice to them that the taxes had been paid is inconsistent with a claim that a default exists. *Eberly v. Balducci,* 61 Md.App. 80, 484 A.2d 1043 (1984). We granted the writ of certiorari to address issues of public importance.[6] We shall affirm the decision of the Court of Special Appeals.

---

**5.** Appellees seemingly did not produce certain evidence to meet their burden of proof on continuing the injunction at trial due to an erroneous assumption on their part and on the part of appellants and the trial court that the parties had stipulated to an agreed upon set of facts. Brief for Appellant at 6; Brief for Appellees at 6, 7–8; *Eberly v. Balducci,* 61 Md.App. 80, 87, 484 A.2d 1043, 1047 (1984). In its February 15 opinion reversing the circuit court's grant of the injunction, *Balducci v. Eberly,* No. 822, September Term, 1982, the Court of Special Appeals noted that the argument of counsel in the circuit court was "never stipulated or proven by testimony or evidence submitted," slip op. at 5–6, 7–8, and therefore, "(the Court could not) assess evidentiary sufficiency, (since) no evidence was submitted." Slip op. at 7.

**6.** Appellants frame the issues as follows:

## II

### (1)

The initial issue before us is the effect of the mandate rendered by the Court of Special Appeals in its opinion in this case, dated February 15, 1983. That mandate reads: "Judgment Reversed. Orders of May 5, 1982 vacated. Appellees to pay the costs." *Balducci v. Eberly*, No. 822, September Term, 1982. A new trial was not awarded in this judgment, by its terms.

Appellants (trustees) contend that the Court of Special Appeals' February 15, 1983 opinion vacating the injunction was a final and conclusive judgment on the merits, the effect of which was to establish a *res judicata* bar to the attempts by the Eberlys in seeking further injunctive relief. Unfortunately for the appellants we do not view the February 15 opinion as having any such effect. Moreover, we find we need not consider the issue of *res judicata* in light of the view we have taken of that opinion. We explain.

We perceive the key issue as being whether the February 15 mandate contemplated the grant of a new trial so as to allow the mortgagors to present evidence to sustain their burden regarding the propriety of granting the injunction.

---

I. Did the Court of Special Appeals err by reversing the Circuit Court's holding of *res judicata* and dissolution of the injunction halting foreclosure when the Court of Special Appeals (A) based its decision on evidence submitted by the Appellees in a second Circuit Court hearing, and (B) had already reviewed the Circuit Court's decision in a prior hearing on exactly the same issues between the same parties and ruled that the Appellees had failed to meet their evidentiary burden?

II. Did the Court of Special Appeals err by enjoining the foreclosure proceedings after default and acceleration due to delinquent taxes solely because the Appellees paid the taxes subsequent to Petitioners' exercising their option to accelerate the entire trust balance, but prior to the filing of the foreclosure suit?

III. Did the Court of Special Appeals err by enjoining further foreclosure proceedings after default for delinquent taxes solely because Appellants accepted principal and interest payments (subsequent to receiving notice that the taxes had been paid)?

Brief for Appellants at 2.

If it did, then the trial court erred in construing that opinion and mandate as constituting a *res judicata* bar to appellees' petition for further injunctive relief.[7]

As a preliminary matter, we find that the February 15 mandate is ambiguous. Where a mandate is ambiguous, one must look to the opinion and other surrounding circumstances to determine the intent of the court. *Couser v. State,* 256 Md. 393, 396, 260 A.2d 334, 336 (1970); *see Pettiford v. State,* 8 Md.App. 560, 569, 261 A.2d 216, 221 (1970); *Barber v. State,* 16 Md.App. 235, 241–242, 295 A.2d 814, 817 (1972) (ambiguous jury verdict); *Cf. Mayne v. State,* 45 Md.App. 483, 487, 414 A.2d 1, 4 (1980).

In examining the expression "Judgment Reversed," we recognize that such an expression in and of itself does not prohibit the interpretation that a new trial is intended. In *Couser,* this Court was faced with the question of whether a mandate of the Court of Special Appeals which read "Judgment Reversed" had the effect of amounting to an acquittal of the criminal defendant. The defendant contended that if that mandate did not preclude a new trial (and, therefore, did not constitute an acquittal), a subsequent change in the mandate which provided for a new trial would violate the fifth amendment guarantee against double jeopardy. Judge Finan for this Court opined that the original mandate issued by the Court of Special Appeals was ambiguous. He further noted that several cases were found to hold that a mandate phrased "Judgment Reversed" did not *of itself* amount to an acquittal nor prohibit the interpretation that a new trial was intended. *Couser,* 256 Md. at 396, 260 A.2d at 336 (emphasis supplied). *See, e.g., Cobb v. Snow,* 14 Utah 2d 170, 380 P.2d 457 (1963); *United States v. Reina,* 172 F.Supp. 113 (S.D.N.Y.1959); *see also United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773,

---

7. *See* Md. Rules 876 and 1076. Subsection (d) of those rules states:
   "d. *Effect of Mandate.*
   When the mandate has been transmitted the (lower court) shall proceed according to the tenor and directions thereof."

15 L.Ed.2d 627 (1966); *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); and *Spriggs v. United States,* 225 F.2d 865 (9th Cir.1955), *cert. denied,* 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956). At least one state has held that the reversal of a judgment without direction is tantamount to remand for a new trial. *State v. Percy,* 81 S.D. 519, 137 N.W.2d 888 (1965). *See Laithe v. McDonald,* 7 Kan. 254 (1871).[8]

We find the general principle enunciated in *Couser* to be particulary applicable to the instant appeal. Our opinion in *George v. Farmers' and Merchants' Bank,* 155 Md. 693, 142 A. 590 (1928) offers further guidance. In *George,* this Court initially reversed a judgment of a ruling by the trial court; the mandate following the opinion being: "Judgment Reversed, with costs to the appellant." *See Farmers' and Merchants' Bank v. Harper,* 151 Md. 358, 137 A. 702 (1926). The judgment was affirmed on reargument. (*See* 153 Md. 128, 137 A. 702). Neither judgment contained an award of a new trial, in terms. On subsequent appeal from a judgment on the verdict, Judge W. Mitchell Digges noted:

"The omission of the words 'new trial awarded,' ... was a clerical omission or oversight on the part of the court. This is clearly indicated by the opinions in the previous cases, because those opinions show that the purpose and intention of this court was that a new trial should be had, in which the defense of forgery would be excluded. This purpose would be entirely frustrated if the judgment and mandate of this court could not be corrected to conform with that intent." *Farmers' and Merchants' Bank,* 155 Md. at 697, 142 A. at 591.

---

**8.** It has been held that the effect of a general and unqualified reversal of a judgment, order or decree is to nullify it completely and to leave the case standing as if such judgment, order or decree had never been rendered, except as restricted by the opinion of the appellate court. *See Landy v. LeSavoy,* 20 N.J. 170, 119 A.2d 11, 14 (1955); *Bands Refuse Removal, Inc. v. Borough of Fair Lawn,* 64 N.J.Super. 1, 165 A.2d 216 (1960). Where nothing more appears, the case must be tried anew. *Woodworth v. Woodworth,* 273 Mass. 402, 173 N.E. 578, 579 (1930).

Still further direction can be gleaned from *Messall v. Merlands Club, Inc.*, 244 Md. 18, 222 A.2d 627 (1966), *cert. denied*, 386 U.S. 1009, 87 S.Ct. 1349, 18 L.Ed.2d 435 (1967). In that case involving the doctrine of *res judicata*, the appellee contended that: "Only the final judgment itself may be considered in applying the principle of res judicata. The opinion, being irrelevant and *obiter dicta*, has no force or effect." This Court responded by stating: "In our judgment a more correct statement of the law will be (that): '... [R]ecourse may be had to the opinion of the court in a former action to ascertain what was in the mind of the court when judgment was rendered, especially where there is only a general finding; ...'" *Messall*, 244 Md. at 37, 222 A.2d at 637.[9]

Therefore, in light of *Couser* and *Farmers' and Merchants' Bank*, as well as *Messall*, we feel justified in concluding that the ambiguous mandate before us may be read in light of its opinion and the surrounding circumstances of the case as a whole. We now find it necessary to look not only to the opinion of the Court of Special Appeals issued February 15, 1983 in which the ambiguous mandate was issued, but also to the surrounding circumstances to determine the intent of the Court of Special Appeals in drafting that opinion and mandate.

In examining that opinion, it appears to us that there was no intention to prohibit the grant of a new trial. The opinion in effect states that the ruling of the circuit court was reversed because the Eberlys did not produce any evidence indicating the necessity or propriety of continuing the injunction. *Balducci*, No. 822, September Term, 1982 (filed February 15, 1983), slip op. at 9.[10] There is no

9. For a further discussion on the effect of a final judgment and mandate, *see generally*, 2 M.L.E. *Appeals* §§ 542 *et seq.* (1960); 2A Md. Digest *Appeal & Error* §§ 1156, 1192 *et seq.* (1965); 3 Am.Jur. *Appeal & Error* §§ 1191 *et seq.* (1936); 5 Am.Jur.2d *Appeal & Error* §§ 953 *et seq.* (1962); 5B C.J.S. *Appeal & Error* §§ 1986 *et seq.* (1958).

10. *See supra* note 5 and accompanying text.

indication in that opinion that a new trial was not to be awarded, except for the fact that the phrase "new trial awarded" did not appear as part of the mandate.

In addition, and we believe particularly instructive to the instant appeal, the second opinion rendered by the Court of Special Appeals, *Eberly v. Balducci,* 61 Md.App. 80, 484 A.2d 1043 (1984), indicates exactly what was intended by that court in its February 15 opinion. In explaining its February 15 reversal, that court found that "the chancellor had no facts presented to him by the moving party, upon whom the burden is placed, sufficient to support the holding." *Id.* at 88, 484 A.2d at 1047 (quoting *Balducci v. Eberly,* slip op. at 1). The Court of Special Appeals did not intend that the Eberlys be prevented from presenting evidence to sustain their burden regarding the propriety of granting the injunction. It simply held that no interlocutory or permanent injunction could be issued based on the record in the circuit court of the mortgagors' first petition for injunctive relief. *Id.* at 87, 484 A.2d at 1046.

■■■ It is not disputed that, had the Court of Special Appeals *explicitly* stated in its February 15 opinion and mandate that a new trial be awarded, it would have been within its power to do so.[11] It is further uncontroverted

---

**11.** Md.Rule 1071 a states:
"*Rule 1071. Remand.*
a. *For Further Proceedings.*
If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of the pleadings, introduction of additional evidence, or otherwise, then this Court, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, may order the case to be remanded to the lower court. Upon remand to the lower court, such further proceedings shall be had by amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, as may be necessary for determining the action upon its merits as if no appeal had been taken and the judgment from which the appeal was taken had not been entered; provided, however, that the order en-

that the determination of whether a new trial should be awarded after reversal is exclusively an appellate one. *See Deloso v. State,* 37 Md.App. 101, 109–110, 376 A.2d 873, 878 (1977). However, the principle applicable here, we believe, underlies those forementioned. An appellate court has the inherent authority in a case such as this to correct or amend clerical errors and irregularities on the part of the court in its issued mandate after it has been received in the court below, if anything has been omitted from a judgment which is necessarily or properly a part of it, and which was intended and understood to be part of it, but which failed to be incorporated in it. *George, supra,* 155 Md. at 697, 142 A. at 591. If the construction and interpretation of an appellate court's mandate is found to be not in accord with the intention of the appellate court, it is subject to review.[12] *See, e.g., Bishields v. Campbell,* 200 Md. 622, 91 A.2d 922 (1952). We find that, under the circumstances, the Court of Special Appeals was not without authority in its second opinion to construe the ambiguous mandate issued in its February 15 opinion.

Thus, we hold the mandate of February 15, when construed with the body of its opinion and in conjunction with the second opinion rendered by the Court of Special Appeals, under the circumstances of this case, does not act to bar the mortgagors from enjoining further foreclosure proceedings. In light of the view we have taken of the original

---

tered by this Court in remanding said case, and the opinion of this Court on which said order is passed, shall be conclusive as to the points finally decided thereby. In such an order remanding a case, this Court will express the purpose for so remanding and in its opinion filed with said order will determine all questions which may have been properly presented."

**12.** A lower court is without power to revise or disregard the mandate of the appellate court. *See* Md.Rules 876 and 1076; *see also Klopfer v. Werber,* 264 Md. 419, 286 A.2d 776 (1972). If the lower court does so, however, the order is illegal and subject to review by the appellate court. *Chesapeake & C.B.R. Co. v. Richfield Oil Corp. of N.Y.,* 180 Md. 192, 194, 23 A.2d 677, 679 (1942), *cert. denied,* 316 U.S. 698, 62 S.Ct. 1297, 86 L.Ed. 1768 (1942).

mandate, it is unnecessary to further consider the issue of whether the doctrine of *res judicata* applies to the instant case.

(2)

The second issue concerns the effect of the attempted cure of tax deficiencies by the mortgagors made subsequent to receipt of notice of default, but prior to the filing of the foreclosure action.

The trustees assert that the decisions of Maryland courts have never allowed mortgagors to cure a default by paying the delinquent taxes after a default has occurred. They argue that to allow the Eberlys to do so would be to render the contract existing between the parties, the deed of trust, which unequivocally provides for the acceleration of payments of the entire trust balance upon a default in the payment of taxes, ineffective.

The mortgagors, on the other hand, urge us to adopt what appears to be the majority rule. That rule recognizes that the curing of tax deficiencies prior to the institution of foreclosure proceedings acts to bar those proceedings. *Clark v. Equitable Life Assur. Soc. of U.S.*, 281 A.2d 488 (Del.1971). We herein adopt that rule and hold it applicable to the case *sub judice.* Before applying the rule, however, we find it helpful to summarize in part principles of law equally applicable to the case at bar.

It is a well established rule in Maryland that a "breach of a covenant in a mortgage or deed of trust to pay taxes when due is a default which permits acceleration of the secured debt, and sale of the encumbered property by foreclosure." *Saunders v. Stradley,* 25 Md.App. 85, 96, 333 A.2d 604, 611 (1975).

The Court has consistently applied this rule, recognizing that when the payment of taxes is made a condition for breach of which foreclosure may be had under a mortgage containing a power of sale (authorizing a sale for any breach of conditions), and there was such a breach, a right to exercise that power of sale for a default in the payment

of taxes exists. *Id.* at 96, 333 A.2d at 611. *See* 3 Jones, *Law of Mortgages of Real Property,* § 2303 (8th ed. 1928).

Moreover, this Court has repeatedly held that the non-payment of taxes, as a breach of a mortgage or deed of trust covenant, constitutes a default the day the taxes begin to bear interest. *Fontana v. Walker,* 249 Md. 459, 462, 240 A.2d 268, 270, *cert. denied,* 393 U.S. 927, 89 S.Ct. 262, 21 L.Ed.2d 263 (1968); *Nylen v. Geeraert,* 246 Md. 4, 12, 226 A.2d 878, 882 (1967). We explained in *Fontana* that:

> "the purpose of an acceleration clause is solely to protect the mortgagee or principal creditor in a deed of trust. If he has good reason to believe that a breach of the debtor's covenant to pay taxes is so serious as to impair his security, he has a right to foreclose."

249 Md. at 462, 240 A.2d at 270. *See Stewart v. McCaddin,* 107 Md. 314, 68 A. 571 (1908); *see also Lotterer v. Leon,* 138 Md. 318, 113 A. 887 (1921) (on mortgagor's failure to pay taxes, mortgagee has right to treat whole debt as due, or to waive default); *Doeller v. Mortgage Guarantee Co.,* 166 Md. 500, 171 A. 856 (1934) (a default exists by agreement of the parties, unless affected by waiver).

In the instant case, the Eberlys were in default under the note because they failed to pay the taxes on the property when they were due. However, when the trustees finally docketed the foreclosure action based upon that default, the taxes had been *paid.*[13] In light of this, we note that in those cases relied on by appellants and cited hereinabove, the outstanding tax debts at issue still remained *unpaid* at the time foreclosure proceedings were commenced.

We have found no Maryland law that addresses this particular situation. Nonetheless, several other jurisdictions, when faced with the precise question, have recognized and adopted what has become the majority rule, that the

---

**13.** The Eberlys paid the outstanding taxes approximately seven weeks prior to the docketing of foreclosure. Brief for Appellant at 4, 13; Brief for Appellee at 12.

payment of delinquent taxes prior to the commencement of the foreclosure action bars acceleration and foreclosure. *See, e.g., Clark, supra,* 281 A.2d 488 (Del.1971); *Kaminski v. London Pub, Inc.,* 123 N.J.Super. 112, 301 A.2d 769 (1973); *Eisen v. Kostakos,* 116 N.J.Super. 358, 282 A.2d 421 (1971); *Eberich v. Solomon,* 112 Conn. 498, 152 A. 823 (1931); *Noyes v. Anderson,* 124 N.Y. 175, 26 N.E. 316 (1891); *Nichols v. Evans,* 92 Misc.2d 938, 401 N.Y.S.2d 426 (1978); *Fleming v. Framing,* 22 Okl. 644, 98 P. 961 (1908); *Foothill Indus. Bank v. Mikkelson,* 623 P.2d 748 (Wyo. 1981); *Chakales v. Djiovanides,* 161 Va. 48, 170 S.E. 848 (1933); *see also* 3 Jones, *supra,* § 2303, at 1006; *cf. Jeffery v. Seven Seventeen Corp.,* 461 A.2d 1009 (Del.Supr.1983) (taxes paid after commencement of foreclosure). *Contra Frisard v. Heisser,* 378 So.2d 127 (La.App.1980) (majority rule rejected).

In *Clark,* the mortgagee commenced foreclosure proceedings against the mortgagor when the latter failed to pay real estate taxes on the property when those taxes became due. The mortgagor did not pay the taxes either before or after suit was commenced. However, the Supreme Court of Delaware held that an offer by the mortgagor, presumably in good faith, to pay the taxes before the commencement of the suit was equivalent to actual payment on the date of the offer when the mortgagee advised that it would still foreclose even after having accepted payment. The court then applied the majority rule in finding for the mortgagor; "payment of those taxes before commencement of the action prevents the operation of the acceleration clause, but payment thereof after commencement of the suit does not bar the foreclosure." 281 A.2d at 489. *See Jeffery v. Seven Seventeen Corp.,* 461 A.2d 1009 (Del.Supr. 1983).

The Superior Court of New Jersey was faced with a similar situation in *Kaminski, supra.* There, the mortgagees attempted to bring foreclosure proceedings against the

mortgagor on the basis that the mortgagor failed to keep the mortgaged premises insured. In fact, the court noted, a policy of insurance had been obtained and was in effect for the premises prior to institution of foreclosure proceedings. In affirming the judgment rendered below refusing to grant mortgagees the right to continue with foreclosure, the court found a default in the payment of insurance premiums to be analogous to a failure to pay taxes when due.

In then applying the majority rule, a "default in the payment of taxes ... may be neutralized if the taxes ... are paid before the complaint in foreclosure is filed," the court reasoned, "(t)he failure to pay taxes or to maintain insurance does not impair the security of the mortgagee if those defaults are corrected promptly, *i.e.*, before the institution of foreclosure proceedings." *Kaminski*, 301 A.2d at 771. We agree with that court's rationale.

Accordingly, we follow the majority rule and apply it to the circumstances present here to hold in favor of the Eberlys/mortgagors. Since, at the time the foreclosure action was filed on March 24, 1982, all tax payments were current,[14] the security of the trustees under the note was unimpaired. The Eberlys effectively cured the default in the payment of taxes prior to the institution of foreclosure proceedings, thus barring the trustees from further pursuing acceleration and foreclosure.

### (3)

In view of our holding in part II (2) it is unnecessary for us to reach the issue of whether the acceptance of principal and interest payments constituted a waiver. Consequently, we intimate no opinion on the validity of the analysis by the Court of Special Appeals on that point.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; APPELLANTS TO PAY COSTS.

---

14. See *supra* note 13 and accompanying text.