926 A.2d 757

**Ronnette McDANIEL, et al.**

v.

**AMERICAN HONDA FINANCE CORPORATION.**

**No. 108, Sept. Term, 2006.**

Court of Appeals of Maryland.

June 12, 2007.

Reconsideration Denied July 24, 2007.

76

John J. Beins (Seth D. Goldberg and Paul D. Gleiberman of Beins, Goldberg & Gleiberman, Chevy Chase; Connie Kratovil Lavelle, Centreville, on brief), for appellants.

Brad D. Weiss (Kimberly S. MacCumbee of Charapp & Weiss, LLP, on brief), McLean, VA, for appellee.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER, (Retired, specially assigned), JJ.

HARRELL, Judge.

In this appeal we are asked to address the merits of a question, which, because of intervening procedural issues, we foresook in a previous opinion in *Simpkins v. Ford Motor Credit,* 389 Md. 426, 430–31, 886 A.2d 126, 129 (2005).[1] Specifically, that question is whether a late fee charged by the lessor of a motor vehicle, in the first instance, constitutes interest and, if so, whether the rate of interest charged was lawful

---

1. The persistence of the question that went unanswered in *Simpkins v. Ford Motor Credit* traces its provenance even further back to *United Cable Television of Baltimore v. Burch,* 354 Md. 658, 685, 732 A.2d 887, 901 (1999) *(Burch I),* where our predecessors declined to address whether late fees authorized by certain types of statutes constituted interest.

under Maryland constitutional and statutory law. The Circuit Court for Prince George's County dismissed lessees-Appellants' First Amended Complaint, which alleged that the late fee assessed by lessor-Appellee was an amount in excess of the legal rate of interest of 6% per annum, as provided by Article III, § 57 of the Maryland Constitution. The trial court concluded that the amount charged for the late fee, set by the lease agreement, was lawful because Maryland Code (1975, 2000 Repl.Vol.), Commercial Law Article (hereinafter "Commercial Law"), § 14–2002(g)(1)(i)[2] authorized a lessor to charge late fees set in the lease agreement, which would not be deemed to be interest. Not being interest, the late fees, and in particular their amount, were not governed by the limit imposed by Article III, § 57. We shall affirm the Circuit Court's judgment.

## I. FACTS

The three representative plaintiffs in this putative class action suit executed lease agreements for personal use motor vehicles, within the same relative period of time,[3] with American Honda Finance Corporation and its various entities ("American Honda"). Each agreement, although involving different dealerships, contained a nearly identical term providing for a "late charge": "I will pay a late charge equal to the lesser of $25 or 5% of the unpaid portion on any payment that is not received within 10 days after it is due, or such lesser amount as set by law."[4] Each plaintiff alleged that American

---

**2.** Commercial Law § 14–2002(g)(1)(i) provides that "[i]f a [consumer] lease permits, a lessor may impose on the lessee: [a] late or delinquency charge for payments or portions of payments that are in default under the lease." This section became effective on 1 January 1996.

**3.** Ronnette McDaniel executed her lease on 23 May 1998, Yanick Hazlewood executed her lease on 26 June 1998, and Laura Baptista executed her lease on 8 May 1997.

**4.** This language appears in the lease of the original, and named representative, plaintiff, Ronnette McDaniel. The "late charge" terms contained in the other leases at issue are identical in substance and vary only in the sense that the lease terms applicable to McDaniel and

Honda assessed, and each plaintiff paid, a single late fee prescribed by the above-quoted term for failing to remit timely a monthly amount due under their respective leases.[5]

Hazlewood are worded in the first person, and those applicable to Baptista are worded in the second person.

5. We digress to note a facially confounding aspect of the relevant pleadings and papers in this regard. The First Amended Complaint alleges generically that "[a]t some point during the applicable statute of limitations period," each of the Plaintiffs "paid a late fee" charged by American Honda under their respective leases. In support, the only demonstrable indication of when a late fee actually was assessed may be inferred from a copy of a billing statement dated 4 September 2000 from American Honda to McDaniel attached as an exhibit to the original Complaint, but not attached or referred to in the First Amended Complaint. Our close comparison of the Record Extract and the Record revealed an anomalous Affidavit of Ronnette McDaniel in Support of Plaintiffs Motion for Class Certification found in the Extract, but not contained in the Record, to which was appended another copy of the 4 September 2000 billing statement. No specifications as to when Hazlewood or Baptista were assessed or paid a late fee could be found in the Record.

McDaniel's billing statement detailed a total amount due of $916.70, comprised of the regular monthly lease installment of $436.52, due on 23 September 2000; an unpaid prior monthly payment of $436.52; a late fee of $21.83 resulting from the unpaid prior payment; and, an additional late fee of $21.83 that seemingly was charged in anticipation of the September monthly payment being late. Despite American Honda's insistence that, in accord with its lease agreements, it only charges a single late fee for each monthly payment that is 10 days past due, the 4 September 2000 statement may not be construed reasonably in any way other than that the second $21.83 late fee, listed under the heading of "Current Charges," represented either: (1) a late fee charged in anticipation of a late 23 September 2000 payment, or (2) a second late fee for the yet unpaid previous regular monthly payment.

Although the billing statement does not indicate explicitly for which prior monthly billing period a late fee was assessed, the only reasonable inference is that the untimely prior payment was from the preceding month's billing period because it is listed among the charges on the 4 September 2000 statement under the heading, "Prior Billing Detail." Without any further allegations advanced by Plaintiffs–Appellants, it also would be reasonable to infer that the previously assessed late fee was *the* singular late fee referred to in the First Amended Complaint and was from the payment due on 23 August 2000.

Commercial Law § 14–1315(d)(1), a provision stating explicitly that late fees provided for in consumer contracts are not interest, became effective on 1 June 2000. Chapter 59, § 10 of the Acts of 2000. Therefore, based on the allegations and reasonable inferences drawable therefrom, the causes of action alleged by Plaintiffs–Appellants relating

## II.  PROCEDURAL HISTORY

On 15 September 2000, McDaniel filed, in the Circuit Court for Prince George's County, a Complaint against American Honda, seeking class action certification and asserting that American Honda charged her and putative class members a late fee in excess of the 6% per annum limit on interest prescribed by the Maryland Constitution.  On 13 December 2000, McDaniel amended her Complaint to include two additional representative plaintiffs, Yanick Hazlewood and Laura Baptista (collectively "Appellants").  The First Amended Complaint alleged four theories of recovery or relief:  (1) the late fees provision was an unlawful liquidated damages contract term exceeding the 6% per annum constitutional limit on interest, (2) a declaratory judgment to the effect that the collection of such a damages provision is not permitted by statute, (3) violation of the Maryland Motor Vehicle Leasing A ct,[6] and (4) violation of the Maryland Consumer Protection Act.[7]  Compensatory and statutory damages, and declaratory and injunctive relief, were sought.  Reformation of the leases was not sought.

The Circuit Court stayed the proceedings on 13 February 2001 in contemplation of the disposition of an expedited appeal to this Court in *Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 805 A.2d 1061 (2002), a case which the trial court felt raised issues bearing directly on those in the present case. The stay was continued by the Circuit Court in 2003 in light of

---

to late fees assessed after 1 June 2000 would appear to have accrued after the effective date of § 14–1315(d)(1), thus rendering § 14–1315(d)(1) controlling on the issue of the legal character of the late fees American Honda charged.  *See infra* Part IV. A.

Because McDaniel's 4 September 2000 billing statement did not form a part of the First Amended Complaint, however, we do not consider it in our analysis of the propriety *vel non* of the trial court's grant of American Honda's motion to dismiss.

6.  Maryland Code (1975, 2000 Repl.Vol.), Commercial Law Article, § § 14–2001 to 14–2010.

7.  Maryland Code (1975, 2000 Repl.Vol.), Commercial Law Article, §§ 13–301 to 13–318.

this Court issuing a writ of certiorari to the Court of Special Appeals in the *Simpkins* case, which facially presented substantive issues very similar to those posed in the instant case. On 21 March 2006, the Circuit Court lifted the stay because of our decision to remand *Simpkins* to the trial court for the consideration of procedural issues unrelated to the merits of those substantive questions.

American Honda filed a Motion to Dismiss for failure of the First Amended Complaint to state a cause of action upon which relief may be granted. After conducting a hearing on the motion, the trial court, on 1 September 2006, dismissed all claims and declared that American Honda was entitled to charge late fees, as framed in the contracts, pursuant to Commercial Law § 14–2002(g). Evidently, the trial court was persuaded, and perceived itself to be bound, by the Court of Special Appeals's opinion in *Simpkins v. Ford Motor Credit*, 160 Md.App. 1, 862 A.2d 471 (2004).[8] *Simpkins* and the

---

8. As technical matter, the Court of Special Appeals's opinion in *Simpkins v. Ford Motor Credit*, 160 Md.App. 1, 862 A.2d 471 (2004), was not binding, in a *stare decisis* sense, on the trial court in this matter. This is because this Court reversed the Court of Special Appeals's judgment in *Simpkins*, thus rendering it a nullity. *Carpenter Realty Corp. v. Imbesi*, 369 Md. 549, 562, 801 A.2d 1018, 1025–26 (2002) (quoting *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1514 n. 11 (11th Cir.1987)) ("A reversal is defined as 'the annulling or setting aside by an appellate court of a decision of a lower court.'"); *Carpenter Realty Corp.*, 369 Md. at 562, 801 A.2d at 1026 (quoting *Balducci v. Eberly*, 304 Md. 664, 671 n. 8, 500 A.2d 1042, 1046 n. 8 (1985)) ("It has been held that the effect of a general and unqualified reversal of a judgment, order or decree is to nullify it completely and to leave the case standing as if such judgment, order or decree had never been rendered, except as restricted by the opinion of the appellate court."). Thus, the *Simpkins* case has no *stare decisis* effect, but was, at most, persuasive authority. *West v. State*, 369 Md. 150, 157, 797 A.2d 1278, 1282 (2002) ("A Court of Special Appeals' opinion underlying a judgment, which is reversed or vacated in its entirety by this Court on another ground, may, depending upon the strength of its reasoning, constitute some persuasive authority in the same sense as other dicta may constitute persuasive authority. Nonetheless, analytically the intermediate appellate court's opinion is only dicta because it no longer supports or reflects a viable appellate judgment. Accordingly, such an opinion is not a precedent for purposes of *stare decisis*.") (citation omitted). Notwithstanding its non-binding effect, the reasoning of the Court of

present case involve automotive finance companies charging late fees for untimely lease payments, challenged as exceeding the legal rate of interest set by the Maryland Constitution. Article III, § 57 of the Maryland Constitution provides, in pertinent part, that the legal rate of interest is 6% per annum *"unless otherwise provided* by the General Assembly." (emphasis added). As understood by the Circuit Court here, the General Assembly so provided by enacting Commercial Law § 14–2002(g), which states that, if a motor vehicle lease permits, a lessor may impose late payment fees on a lessee. In reaching this conclusion, the Circuit Court relied on the intermediate appellate court's reasoning in *Simpkins,* holding that late fees authorized by Commercial Law § 14–2002(g) are not interest and are exempt from the constitutionally prescribed maximum interest rate. Accordingly, the Circuit Court dismissed the Complaint.

Appellants noted a timely appeal to the Court of Special Appeals. Before the intermediate appellate court could decide the case, Appellants petitioned for, and we granted, a writ of certiorari. 396 Md. 12, 912 A.2d 648 (2006). In the petition, two questions are presented for our review:

1. Did § 14–2002(g)(1) of the Commercial Law Article authorize [Appellee] American Honda Finance Corporation to charge [Appellants] a late fee in excess of 6% *per annum,* the legal limit on interest set forth in Article III, § 57 of the Maryland Constitution?

2. Did § 14–1315 of the Commercial Law Article authorize [Appellee] American Honda Finance Corporation to charge [Appellants] a late fee in excess of 6% *per annum* even though [Appellants'] lease agreements with American Honda were entered into prior to the October 1, 2000 effective date of section 14–1315?

Because we conclude that Appellants did not state a claim upon which relief could be granted, we affirm the judgment of the Circuit Court dismissing the action.

---

Special Appeals's opinion in *Simpkins* certainly could be found persuasive by a receptive court.

## III. STANDARD OF REVIEW

The standard of review for a grant of a motion to dismiss is well-settled. In *Debbas v. Nelson,* 389 Md. 364, 885 A.2d 802 (2005), we reiterated that:

> In reviewing the underlying grant of a motion to dismiss, we must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations. In the end, "[d]ismissal is proper only if the complaint would fail to provide the plaintiff with a judicial remedy." In sum, because we must deem the facts to be true, our task is confined to determining whether the trial court was legally correct in its decision to dismiss.

389 Md. at 372, 885 A.2d at 807 (citations omitted); *see also Fioretti v. Md. State Bd. of Dental Exam'rs,* 351 Md. 66, 71–72, 716 A.2d 258, 261 (1998).

## IV. DISCUSSION

Appellants argue that, under our decision in *United Cable Television of Baltimore v. Burch,* 354 Md. 658, 732 A.2d 887 (1999) (*Burch I*), the late fees American Honda assessed them for late payments under their leases constitute interest subject to the Constitutional rate limitation thereon. This is because the late fee, like the "administrative fee" charged by United Cable Television in *Burch I* for the late payment of cable bills, is not authorized by statute to exceed the 6% per annum limit on interest. *Burch I,* 354 Md. at 675, 732 A.2d at 896. Appellants contend, in riposte to American Honda's assertions and the Circuit Court's reasoning, that Commercial Law § 14–2002(g)(1)(i) does not sanction what Appellants calculate to be a 182.5% annual interest rate.[9] Therefore, they seek restitu-

---

9. This calculation is premised on American Honda charging 5% on the balance of a monthly lease installment yet unpaid after the lapse of 10 days from the due date of payment. Appellants extrapolate this scheme to mean that 5% is charged every 10 days for an entire year, thus amounting to 36.5 payments of 5%, or 182.5% annually. American

tion and other recompense for any late fee amounts exceeding the constitutional 6% rate "cap." We hold, however, pursuant to Commercial Law § 14-2002(g)(1)(i), that the late fees American Honda charged Appellants are not interest and the timing and amount of such fees are governed by the terms of the leases in question.

A. The General Assembly "Provided Otherwise" by Enacting Commercial Law § 14-2002(g)(1)(i)

■ As we noted previously, Article III, § 57 of the Maryland Constitution provides, in pertinent part, that the legal rate of interest is 6% per annum *"unless otherwise provided* by the General Assembly." (emphasis added). This Court, in *Burch I,* held that, because the General Assembly did not authorize or regulate by statute the assessment of late fees for untimely payment of cable bills, the late fees charged by the cable provider remained subject to the limit on interest rates imposed by Article III, § 57. 354 Md. at 681, 732 A.2d at 899. That is not the case here. Application of the principles of statutory interpretation lead us to the conclusion that the General Assembly "provided otherwise" by enacting Commercial Law § 14-2002(g)(1)(i), which applies to consumer motor vehicle leasing contracts such as those binding Appellants. *See* Commercial Law § 14-2001(g).

In *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park,* 392 Md. 301, 896 A.2d 1036 (2006), we said:

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. In ascertaining legislative intent, we first examine the plain language of the statute, and if the plain language of the statute is unambiguous and consistent with the statute's apparent purpose, we give effect to the statute as it is written. If a statute has more than one reasonable interpretation, it is ambiguous. If the language of the statute is ambiguous, we

---

Honda claims, as noted *supra* at note 5, that it charges only a one time late fee for each late monthly payment.

resolve the ambiguity in light of the legislative intent, considering the legislative history, case law, and statutory purpose. We consider both the ordinary meaning of the language of the statute and how that language relates to the overall meaning, setting, and purpose of the act. We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense. We construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.

392 Md. at 316, 896 A.2d at 1045 (citations omitted).

Section 14–2002(g)(1)(i) provides, "[i]f a lease permits, a lessor may impose on the lessee: [a] late or delinquency charge for payments or portions of payments that are in default under the lease." The statute plainly authorizes late fees, thus permitting and regulating that which ordinarily was not permitted otherwise at that time. *See Burch I*, 354 Md. at 680, 732 A.2d at 899. The question remains whether these authorized late fees constitute interest. We believe that had the General Assembly intended the "late charges" under § 14–2002(g)(1)(i) to be considered interest, the Legislature would have labeled them as such.[10] Instead, the General Assembly chose to refer to them as "late or delinquency charges." The General Assembly, particularly at the time Commercial Law § 14–2002(g)(1)(i) was enacted, demonstrated that it knew how to distinguish "late charges" from "interest." *See, e.g.,* Maryland Code (1995, 2003 Repl.Vol.), Insurance Article, § 6–108(a) ("A tax not paid when a report or declaration is due to be filed is subject to a *penalty of 5% and interest....*") (emphasis added); Maryland Code (1974, 2003 Repl.Vol.), Real Property Article, § 11–110(d) ("Payment of assessments, together with *interest, late charges,* if any, costs

---

10. The General Assembly has shown, in legislation contemporaneously adopted with the enactment of Commercial Law § 14–2002(g)(1)(i), that it is capable of discerning and classifying certain types of late fees as interest. *See, e.g.,* Maryland Code (1995, 2003 Repl.Vol.), Insurance Article, § 15–1221(g) ("The plan of operation shall provide for imposition of an *interest penalty for late payment* of assessments.") (enacted 1 October 1997) (emphasis added).

of collection and reasonable attorney's fees may be enforced by the imposition of a lien on a unit in accordance with the provisions of the Maryland Contract Lien Act.") (emphasis added); Maryland Code (1974, 2003 Repl.Vol.), Real Property Article, § 11A–110(e)(1)(ii) (same); Maryland Code (1993, 2004 Repl.Vol.), State Personnel & Pensions Article, § 21–314(d)(2) ("A participating employer that does not submit supporting payroll data as required by the State Retirement Agency within the time required is liable for: (i) a *late charge* of $250 for each payroll for which the supporting data is late; and (ii) *interest* on delinquent late charges at 10% per year if the late charge is not paid by the date certified by the State Retirement Agency.") (emphasis added).

It makes no difference in our analysis that several other statutes, classified by *Burch I* as Class II and III statutes,[11] declare specifically that the late charges they authorize are not interest. *See Burch I,* 354 Md. at 676–77 & nn. 6–8, 732 A.2d at 897–98 & nn. 6–8. This is because Class I statutes, which do not state specifically that their authorized late fees are not interest, are no more informative on the matter of interest than Class IV statutes, of which § 14–2002(g)(1)(i) is an example;[12] yet, late fees authorized by Class I statutes presumably still are not subject to the limitation on interest in Article III, § 57. *See Burch I,* 354 Md. at 680, 732 A.2d at 899 ("[A]bsent statutory authorization, [late fees] would constitute interest on the presently due and payable debt and would

---

**11.** Judge Rodowsky, writing for the *Burch I* Court, delineated four distinct "classes" of statutes pertaining to the imposition of late fees. "Class I statutes regulate the amount and timing of a late charge." *Burch I,* 354 Md. at 675, 732 A.2d at 896. "[A] Class II statute regulates the amount and timing of late charges and, in addition, expressly provides that those charges are not interest." *Burch I,* 354 Md. at 676–77, 732 A.2d at 897. "Class III statutes authorize late charges without fixing any maximum late charge. Further, these statutes expressly state that any late charge permitted by the statute is neither interest nor a finance charge." *Burch I,* 354 Md. at 677, 732 A.2d at 897. "Class IV statutes simply recognize that late charges, or late charges permitted by law, may in fact be assessed." *Burch I,* 354 Md. at 678, 732 A.2d at 898.

**12.** *Burch I,* 354 Md. at 678–79 & n. 11, 732 A.2d at 898 & n. 11.

be subject to the limitations on interest."). *But see Burch I,* 354 Md. at 685, 732 A.2d at 901 ("[W]e intimate no opinion on whether late charges in other types of transactions [than those unauthorized by statute], particularly those falling within Class IV, . . . are or are not interest."). In any event, *Burch I* did not rely on the fact that Class II and III statutes contained "disclaimers stating that certain statutorily authorized late charges are not interest," but viewed them as merely "reinforcing [its] conclusion" that Class I, II, and III statutes depart from the constitutional interest rate limitation. 354 Md. at 680, 732 A.2d at 899. The very fact that Commercial Law § 14–2002(g)(1)(i) was enacted to permit late fees is indicative that the Legislature intended to fit situations such as are presented in the present case within the exception provided in Art. III, § 57.

By its plain terms, the statute allows contracting parties to agree to the assessment of late fees. Commercial Law § 14–2002(g)(1)(i) ("If the lease permits. . . ."). This provision allows contracting parties to decide whether to assess and the amount of the late fee, rather than be governed by a default mechanism where Art. III, § 57 would treat such charges as interest. We believe it to be no coincidence that the language delegating the assessment of a late fee to the contracting parties also is found in the representative Class II and III statutes highlighted in *Burch I,* 354 Md. at 676–77 & nn. 6–8, 732 A.2d at 897 nn. 6–8,. The representative Class II statute contained the phrase "[i]f the loan contract provides for them . . . ." Commercial Law § 12–105(b). The highlighted Class III statutes contained similar wording. Commercial Law § 12–910(a) ("If the agreement governing a revolving credit plan permits. . . ."); Commercial Law § 12–1008(a) ("If the agreement governing a loan permits . . . .").

Accordingly, we conclude that, pursuant to Commercial Law § 14–2002(g)(1)(i), whatever late fees Appellants incurred before 1 June 2000 and after 1 January 1996 were not interest, and therefore were not subject to the limitation of 6% per annum interest rate imposed by Art. III, § 57. As for any

late fees that may have been assessed after 1 June 2000,[13] we hold that the controlling statute is Commercial Law § 14–1315(d)(1), which was enacted by the General Assembly in response to *Burch I* specifically to clarify that "[a] late fee imposed under [a consumer contract] is not . . . [i]nterest." There is no question that the motor vehicle leases executed by Appellants fall within the bounds of § 14–1315.[14] The statute plainly covers "consumer contracts," which entail "the . . . lease . . . of goods . . . which are for personal, family, or household purposes." Commercial Law § 14–1315(a)(2).

The lease of a motor vehicle is undoubtedly the type of contract for a personal or family good contemplated by the

---

**13.** This is the effective date of Commercial Law § 14–1315(d)(1), which *inter alia*, made even more explicit that late fees in consumer contracts of the type involved here are not interest. Chapter 59, §§ 1, 10 of the Acts of 2000.

**14.** Commercial Law § 14–1315 "Late fees," provides, in relevant part:
(a) Definitions.—(1) In this section the following words have the meanings indicated.
(2) "Consumer contract" means a contract involving the sale, lease, or provision of goods or services which are for personal, family, or household purposes.
(3) "Contract," unless specifically provided otherwise, includes consumer, commercial, and business contracts, covenants, leases of any kind, and tariffs on file with any regulatory authority.
(4) (i) "Late fee" means any charge or fee imposed because a payment is not made when the payment is due under the terms of a contract.
(ii) "Late fee" includes a fee imposed under subparagraph (i) of this paragraph that is described:
1. As a flat rate
2. As a percentage of the amount due; or
1. In any other terms.
(b) Agreement by parties.—The parties to a contract may agree to require the payment of a late fee when a party fails to make a payment when the payment is due.
(c) Contract disclosure terms.—A contract that requires the payment of a late fee shall disclose, by its terms or by notice:
(1) The amount of the late fee;
(2) The conditions under which the late fee will be imposed; and
(3) The timing for the imposition of the late fee.
(d) Nature of fee.—A late fee imposed under this section is not:
(1) Interest; . . . .

statute.[15] It is also evident that American Honda's late fee, which is calculated as a percentage of the amount due, is precisely what the statute regards as a late fee. Commercial Law § 14–1315(a)(4)(ii)2. Because Commercial Law § 14–1315(d)(1) states that late fees assessed in accord with consumer contracts are not interest, contradicting the foundation of Appellants' argument that any late fees charged here after 1 June 2000 are interest, the remainder of their argument concerning the constitutional rate of interest becomes moot. Thus, any late fees charged by American Honda after 1 June 2000 are governed properly by the terms of the contracts American Honda executed with its lessees. *See* Commercial Law § 14–1315(b), (c).

■ To the extent that § 14–1315(d)(1) is construed to govern any late fees assessed to and/or paid by Appellants after 1 June 2000, Appellants argue the application of the statute to their leases executed before the effective date of the statute impairs their contract rights impermissibly. They are wrong for the simple reason that the supervening law has not changed the substance of their leases.

■ The test for determining whether a subsequently enacted statute impairs the obligations of a contract under the Contract Clause of the U.S. Constitution [16] and its closest Maryland counterpart [17] is well-settled. "In determining whether an enactment violates the clause, a court engages in a three part inquiry: '[(1)] whether there is a contractual

---

15. Appellants conceded in the First Amended Complaint that their leases were consumer leases.

16. U.S. Const. art. I, § 10, cl. 1 ("No State shall ... pass any ... Law impairing the Obligation of Contracts.").

17. The closest analogous Maryland provision to the Contracts Clause is Article III, § 40 of the Maryland Constitution, which regulates the power of eminent domain. *Id.* ("The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation...."). Appellants' contention with regard to Art. III, § 40 would be that they possessed contractual rights that were taken by the State vis-a-vis the enactment of § 14–1315.

relationship, [ (2) ] whether a change in law impairs that contractual relationship, and [ (3) ] whether the impairment is substantial.'" *Allstate Ins. Co. v. Kim,* 376 Md. 276, 299, 829 A.2d 611, 624 (2003) (quoting *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328, 337 (1992)); *see also E. Prince Frederick Corp. v. Bd. of County Comm'rs,* 320 Md. 178, 183, 577 A.2d 27, 30 (1990). There is no question that a contractual relationship here pre-existed the effective date of § 14–1315, but Appellants' argument begs the question of whether that relationship actually was impaired by application of a change in law created by the enactment of § 14–1315(d)(1). Appellants' argument fails because, as our holding that the controlling law pre-existing § 14–1315 designated the late fees here as non-interest makes plain, there was no appreciable change in law. Our analytical conclusion is unaffected whether we apply § 14–2002(g)(1)(i) or § 14–1315(d)(1). In either case, the late fees are not interest, obviating the application of Art. III, § 57. Thus, although a change in law occurred in the sense that a new statute was enacted to govern consumer leases, that new statute made no substantive change to the law governing such leases. Accordingly, no impairment occurred.

### B. Commercial Law § 14–2002(g)(1)(i) Did Not Unconstitutionally Delegate the Law-making Authority of the General Assembly

Appellants argue that even if the General Assembly intended for Commercial Law § 14–2002(g)(1)(i) to allow motor vehicle lessors and lessees to determine whether to assess and the permissible amount of late fees, such an act constitutes an unlawful delegation of law-making authority in violation of the separation of powers doctrine. Particularly, Appellants explain that because Art. III, § 57 invested in the Legislature the exclusive authority to provide for an interest rate in excess of 6% per annum, it is unlawful for § 14–2002(g)(1)(i) to delegate completely that authority to private parties, such as American Honda, to set a different rate by contract. We do not agree with Appellants' contention that § 14–2002(g)(1)(i)

represents a complete or invalid delegation of constitutionally-granted authority.

■ Appellants rely on several opinions of this Court expressing the general proposition that "the General Assembly cannot constitutionally delegate to another body its 'fundamental decision making authority' in the sense that it cannot delegate a function which the Constitution expressly and unqualifiedly vests in the General Assembly itself." *Christ by Christ v. Dept. of Natural Res.*, 335 Md. 427, 444, 644 A.2d 34, 42 (1994); *see also Ahlgren v. Cromwell*, 179 Md. 243, 247, 17 A.2d 134, 136 (1941); *Pressman v. Barnes*, 209 Md. 544, 552, 121 A.2d 816, 820 (1956); *Citizens' Sec. & Land Co. v. Uhler*, 48 Md. 455, 459 (1878). This general proposition, however, is inapposite when Appellants attempt to extend it beyond its intended bounds. It is clear that the General Assembly is not permitted to assign entirely its law-making powers to another branch of government, or the people of the State. *Christ*, 335 Md. at 444–45, 644 A.2d at 42 ("Thus the General Assembly could not delegate to an administrative agency its power to impeach, to propose constitutional amendments, or to enact statutes."). The General Assembly, however, may enact statutes expressing its general disposition and policy decisions on certain matters. Those statutes, by virtue of their delegation of a degree of interpretive or enforcement authority to other branches of government, or individual persons, do not equate necessarily with the wholesale delegation of law-making authority. *Christ* makes this point clearly. In upholding the General Assembly's delegation of power to the executive branch for regulatory rule-making on certain issues, we recognized that "when the General Assembly enacts a statute, embodying its policy decision or decisions, the Legislature often must delegate significant authority to the executive branch which is vested with the constitutional responsibility of administering the statute." 335 Md. at 445, 644 A.2d at 42. Also, this Court has noted previously "many instances in which authority is lodged in and permitted to private persons by the Legislature." *Price v. Clawns*, 180 Md. 532, 538, 25 A.2d 672, 675 (1942). There is a vast difference between the

Legislature abdicating completely its law-making authority, and the enactment of a statute that vests a certain degree of discretion to parties affected by the statute. In the present case, the General Assembly did not hand over to motor vehicle lessors and lessees the authority to pass statutes pertaining to late fees, but merely enacted a statute recognizing the ability of private contracting parties to agree on their own accord to terms regarding late fees.

■ Indeed, aside from Commercial Law § 14–2002(g)(1)(i), the *Burch I* Court identified previously, without invalidating them, several statutes leaving it to contracting parties the question of whether to permit late fees. *See, e.g.,* Commercial Law § 12–105(b) ("If the loan contract provides for them...."; Commercial Law § 12–910(a) ("If the agreement governing a revolving credit plan permits...."); Commercial Law § 12–1008(a) ("If the agreement governing a loan permits...."). In fact, *Burch I* implicitly noted the propriety of the Legislature's choice, in light of Art. III, § 57, to leave it to private contracting parties whether to assess late fees in stating that "these statutes permit that which would otherwise be unpermitted...." 354 Md. at 680, 732 A.2d at 899.

We also find compelling the determination in *Fish Market Nominee Corp. v. G.A.A., Inc.,* 337 Md. 1, 650 A.2d 705 (1994), that the General Assembly's "ability to otherwise provide [under Art. III, § 57] is unrestricted." 337 Md. at 10, 650 A.2d at 709. In *Fish Market,* this Court held that the General Assembly did not relent unlawfully its law-making power by allowing Baltimore City to set the redemption interest rate on the tax sale of real property greater than the default interest rate of 6% fixed by Art. III, § 57. 337 Md. at 10–11, 650 A.2d at 709. The *Fish Market* Court concluded, based on the principles of constitutional interpretation and the evolution of Art. III, § 57, that the framers intended "that the power granted to the General Assembly in § 57 [be] of a 'plenary and unrestricted nature.'" 337 Md. at 10, 650 A.2d at 709 (quoting *Carozza v. Fed. Fin. Co.,* 149 Md. 223, 247, 131 A. 332, 341 (1925)). Although *Fish Market* involved the delegation of

authority from the General Assembly to a local municipality, and not private individuals, as is the case in the present controversy, the overarching principle of *Fish Market* still controls. So long as the delegation of authority to set interest rates does not violate provisions of the State or Federal constitutions, no unlawful delegation of law-making authority has occurred. Appellants do not indicate, and we cannot find, any such violations here.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS TO BE DIVIDED EQUALLY BY APPELLANTS.**